UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STAR NORTHWEST, INC., d/b/a KENMORE LANES and 11TH FRAME CASINO,

    Plaintiff(s),

  v.

CITY OF KENMORE, et al.,

    Defendant(s).

NO. C05-2133P

**CORRECTED**
ORDER ON MOTION FOR SUMMARY JUDGMENT

This corrected order of summary judgment seeks to redress errors in the Court's original order (Dkt. No. 90) which were brought to light in Plaintiff's Motion for Reconsideration (Dkt. No. 96). On August 10, 2006, the Court held a telephonic conference in which counsel for all parties (Paul Dayton for Plaintiff, Dan Lossing and Jayne Freeman for Defendants) participated. Although Defendants did not respond in writing to Plaintiff's Motion for Reconsideration, agreement with Plaintiff's positions on the two issues presented for reconsideration (first, that Plaintiff's Sixth Cause of Action for refund of gambling tax revenues had not been addressed by the summary judgment motion and therefore survived the Court's ruling on that motion; second, that dismissal of Plaintiff's takings claim for non-ripeness should have been without prejudice) was voiced orally.

Defendants City of Kenmore and Kenmore City Council sought an order of summary judgment dismissing Plaintiff's claims against them for enacting an ordinance banning the operation of social card rooms within the Kenmore city limits. Having reviewed the briefing, exhibits and declarations of both sides and having heard oral argument on the motion, the Court found that there were no genuine issues of material fact and that Defendants were entitled to judgment as a matter of law. The Court's corrected order on summary judgment shall be entered as follows:

**ORD ON MTN**
**FOR SUMM JMT - 1**

1    The Court PARTIALLY GRANTS Defendants' motion for summary judgment and
2    DISMISSES all of Plaintiffs' claims except Plaintiff's Sixth Cause of Action (which was not the
3    subject of Defendants' motion); the dismissed claims shall all be dismissed with prejudice except for
4    Plaintiff's claim that Defendants' action constituted a taking without just compensation, which claim
5    shall be dismissed without prejudice.

## BACKGROUND

By statute (the Washington Gambling Act), the state legislature preempted the fields of gambling licensing and regulation. RCW 9.46.285. The statutory scheme invests a limited authority in the state's counties and cities as regards gambling:

> [A] city. . . may absolutely prohibit, but may not change the scope of license, [*sic*] any and all of the gambling activities for which the license was issued. RCW 9.46.295.

On March 10, 2003, the Kenmore City Council ("the Council") passed an ordinance, No. 03-167, that banned card rooms, but permitted Plaintiffs' operation (the "11th Frame") to remain open under a "grandfather" clause. Def Mtn, Batchelor Decl. at pp. 477-504. In the wake of the decision in Edmonds Shopping Center Assoc. v. City of Edmonds, 117 Wn.App. 344 (2003),[1] King County Superior Court Judge Lukens ruled that Defendants could not selectively permit some gambling establishments and not others, but were required to either permit or ban all gambling.

On December 19, 2005, the Council passed Ordinance 05-0237 ("the Ordinance"), prohibiting social card rooms within the City. Batchelor Decl. at pp. 11-18. The termination of existing operations was to be effective immediately (at the end of December 2005), with no grandfathering or amortization period. Plaintiffs filed this lawsuit, alleging causes of action for regulatory taking, violations of state and federal substantive due process and injuries under §1983. Plaintiffs then filed

---

[1] " Instituting a schedule to phase out existing gambling activities is not absolutely prohibiting gambling activities. . . [D]ifferentiating between existing and future uses is more regulatory in nature, thus violating RCW 9.46.925." Edmonds, 117 Wn.App. at 358.

**ORD ON MTN**
**FOR SUMM JMT - 2**

1    for a preliminary injunction to permit them to continue operations during the pendency of this

2    litigation; on the eve of the injunction hearing, the parties reached an agreement and the card room has

3    remained in operation throughout the course of this action.

4    **DISCUSSION**

5    Plaintiffs attack the Ordinance on three grounds: (1) the Ordinance results in the card room

6    being transformed into a "legal nonconforming use" which is entitled to continue indefinitely or at least

7    be "reasonably amortized"; (2) the Ordinance works a taking on Plaintiffs' enterprise for which they

8    are entitled to compensation; and (3) the Ordinance is a violation of state and federal substantive due

9    process. This opinion will examine each argument in turn.

10   <u>Nonconforming use</u>

11   The Kenmore Municipal Code defines a nonconformance as:

13   [A]ny use. . . established in conformance with the city of Kenmore rules and regulations in effect at the time of establishment that no longer conforms to the range of
14   uses permitted in the site's current zone. . . due to changes in the code or its application to the subject property.

15   KMC 18.20.1860. Plaintiffs' card room fits the qualifications of a "nonconforming use" under this

16   definition: it was established in the 1970s before the incorporation of the city (Pltfs Decl. of Evans,

17   Dkt. No. 8) and as late as 2003 was permitted to remain in operation by virtue of a "grandfather"

18   clause to an ordinance which otherwise operated to ban card rooms within the city. Batchelor Decl. at

19   pp. 477-504. It is only by virtue of the Ordinance in question that it "no longer conforms to the range

20   of uses permitted in the site's current zone..."

21   The Kenmore development regulations further state that, "[o]nce created pursuant to KMC

22   18.20.1860, a nonconformance may be continued in a manner consistent with the provisions of this

23   chapter." KMC 18.75.030. It is Plaintiffs' position that these regulations combine to dictate that the

24   city must permit any nonconforming use to continue indefinitely.

26   **ORD ON MTN**
     **FOR SUMM JMT - 3**

1  This is not a supportable contention.  First of all, the language of KMC 18.75.030 is permissive: "... a nonconformance *may* be continued..."  The language of the Ordinance clearly speaks to an intention not to permit card rooms to continue in Kenmore.

Secondly, Plaintiffs' position is at odds with the holding of the leading Washington case on nonconforming uses, Rhod-A-Zalea & 35th, Inc. v. Snohomish County, 136 Wash.2d 1 (1988).  The Washington Supreme Court observed that "[c]ourts have consistently recognized that nonconforming uses are subject to later enacted reasonable police power regulations."  Id. At 9 (citations omitted).  Clearly, even if Plaintiffs' card room constitutes a legal nonconforming use, Defendant is not constrained from doing anything but permitting the 11th Frame to remain in operation indefinitely.

Plaintiffs, however, claim support from Rhod-A-Zalea's holding that "[l]ocal governments, of course, can terminate nonconforming uses but they are constitutionally required to provide a reasonable amortization period." Id. at 10 (citation omitted).  Plaintiffs claim that the card room, if not entitled to operate indefinitely, must at least be afforded a "reasonable" time period during which to amortize their loss.  In response, Defendant cites to Edmonds[2] and a later case (Paradise, Inc. v. Pierce County, 124 Wash.App. 759 (2004)[3]) for their holdings that the Washington Gambling Act does not permit the municipalities to "regulate" gambling operations by building in amortization periods or grandfather clauses.

This opinion does not seek to reconcile that apparent conflict; rather the Court finds that the Rhod-A-Zalea holding concerning amortization for nonconforming uses does not apply to gambling operations like Plaintiffs'. The protection afforded nonconforming uses springs from the "vested rights" accorded such uses by virtue of the fact that the uses were legal when they originated: "The

---

[2] " Instituting a schedule to phase out existing gambling activities is not absolutely prohibiting gambling. . . it is regulation."  Edmonds, 117 Wn.App. at 358.

[3] "[B]ecause the County could not regulate gambling, a ban on gaming was the only means available to realize the public purpose of stopping card room gaming."  Paradise, 124 Wash.App. at 775.

**ORD ON MTN**
**FOR SUMM JMT - 4**

right to continue a nonconforming use despite a zoning ordinance which prohibits such a use in the area is sometimes referred to as a 'protected' or 'vested' right." Rhod-A-Zalea, 136 Wash.2d at 6.

But the state has specifically exempted gambling licenses from the creation of any vested rights. The Washington Administrative Code states: "[T]he issuance of any license by the commission shall not be construed as granting a vested right in the privileges so conferred." WAC 230-04-175. Plaintiffs cannot avail themselves of the protections traditionally granted nonconforming uses because they cannot claim a vested right in the continued operation of their gambling operation. Defendants are within their statutory and constitutional authority to exercise their police power by terminating the gaming use immediately.

Takings

Private property shall not be taken for public use, without just compensation. U.S. Constitution, Amendment V. Plaintiffs seek such compensation pursuant to a regulatory taking, but their claim to this constitutional protection suffers from two fatal defects.

The first concerns whether Plaintiffs even have a "private property" interest in their card room operation which the Constitution will protect. In U.S. and Fed. Communications Commission v. Edge Broadcasting Co., 509 U.S. 418 (1993), the Supreme Court stated that gambling "implicates no constitutionally protected right; rather, it falls into a category of 'vice' activity that could be, and frequently has been, banned altogether." Id. at 426. The Court finds that this holding, combined with the WAC admonition that the issuance of a gambling license "shall not be construed as granting a vested right in the privileges so conferred," renders Plaintiff unable to claim a protectable right in the operation of the 11th Frame card room.

In addition to the absence of a constitutionally protected right, Plaintiffs brought this claim directly in federal court. A federal takings claim is not ripe until the claimant has sought, and been denied, compensation through state procedures for such claims. Williamson Co. Reg. Planning

ORD ON MTN
FOR SUMM JMT - 5

1  Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194-95 (1985).  Washington's mechanism
2  for adjudicating claims of regulatory takings has been found adequate and a necessary prerequisite to a
3  federal takings claim.  Macri v. King County, 126 F.3d 1125 (9th Cir. 1997).  Plaintiffs have
4  completely failed to pursue a regulatory takings claim in state court.

5        Plaintiffs' interpose two objections to this requirement.  The first is that the pursuit of such a
6  determination in state court would be "futile" and therefore nonperformance should be excused.
7  Plaintiffs point to the two threshold inquiries that state law takings claims require ("First, whether the
8  regulation destroys or derogates a fundamental property ownership attribute.  Second, whether the
9  regulation seeks less to prevent a harm than to impose a requirement to provide an affirmative public
10 benefit."  Pltfs Memo, fn. 21.) and then assert, without authority or explanation, that "[t]hey cannot be
11 proved here."  Id. at p. 15.  It is not at all apparent to this Court why this should be the case.  In point
12 of fact, the argument that their right to continue operation of the card room is a "fundamental property
13 ownership attribute" is one of the central tenets of Plaintiffs' position in this lawsuit.  Plaintiffs fail to
14 establish that pursuing adjudication of their compensation claim through state court would be a futile
15 and useless act.

16       Plaintiffs' second objection to the standard federal takings claim prerequisite is both theoretical
17 and unpersuasive.  Plaintiffs cite to San Remo Hotel, L.P. v. City and County of San Francisco, 545
18 U.S. 323, 125 S.Ct. 2491 (2005) and quote the San Remo opinion to suggest that the Supreme Court
19 intended to eliminate or somehow disavow the Ninth Circuit's Macri holding requiring the
20 adjudication of a takings claim through the state compensation process.  The language which Plaintiffs
21 quote[4] is in fact pre-Williamson language and is cited in a context which in no way suggests that an
22 "exhaustion of state remedies" requirement is overly stringent or unfair.

---

[4] "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 125 S.Ct. at 250.

**ORD ON MTN**
**FOR SUMM JMT - 6**

In actuality, there is language in the San Remo opinion suggesting the Williamson requirement of state exhaustion ought to be re-examined but (as Plaintiffs acknowledge) the language is only found in the concurring opinion and (as careful reading of the selection reveals) it is more in the nature of a musing or a suggestion than a pronouncement with any precedential value. The fact remains that Williamson and Macri are still valid legal authority and this Court will not accept Plaintiffs' invitation to ignore them. The takings claim is not ripe and will accordingly be dismissed without prejudice.

Both parties provided briefing on whether the action before this Court satisfies the substantive elements of a takings claim. On the basis of the finding that Plaintiffs' takings claim is not yet ripe, this opinion does not reach the merits of that cause of action.

Substantive Due Process

Plaintiffs' federal and state substantive due process claims must be analyzed separately. At both the state and federal levels, a three-part test (with slight variations) is employed. The test considers:

1. Whether the regulation is aimed at achieving a legitimate public purpose;
2. Whether it uses means that are "reasonably necessary" to achieve that purpose (the federal test asks if the means are "rationally related" to the purpose); and
3. Whether it is unduly oppressive on the landowner.

Edmonds, 117 Wash.App. at 364; Pearson v. City of Grand Blanc, 961 F.2d 1211, 1223 (6th Cir. 1992).

The Court declines to reach the issue of whether Plaintiffs have a supportable federal substantive due process claim. Defendants cite a line of federal authority which clearly holds that "the scope of substantive due process does not extend to areas addressed by other, more specific provisions of the Constitution." Armendariz v. Penman, 75 F.3d 1311, 1326 (9th Cir. 1996); *see also* Squaw Valley Dev. v. Goldberg, 375 F.3d 936, 948 (9th Cir. 2004); Madison v. Graham, 316 F.3d 867, 870-

**ORD ON MTN**
**FOR SUMM JMT - 7**

71 (Mont. 2002) ("Since deciding *Armendariz,* this court has consistently held that substantive due process claims are precluded where the alleged violation is addressed by the explicit textual provisions of the Fifth Amendment's Takings Clause.").

The Armendariz court notes that the Supreme Court has been steadily moving away from extending substantive due process protections to purely economic interests such as those of Plaintiff's. 75 F.3 at 1318.  Neither in their briefing nor at oral argument have Plaintiffs responded to this clear federal precedent, and the Court will assume on that basis that Plaintiffs concede the validity and impact of the Armendariz rationale.  Plaintiffs' federal substantive due process claim will be dismissed.

Plaintiffs fare no better under the state substantive due process analysis:

1. ***Legitimate public purpose***: Plaintiffs argue that, since the Council did not explicitly state a purpose for the Ordinance, this Court must accept Plaintiffs' contention that the purpose was to prohibit the *proliferation* of card rooms.  The language of the Ordinance belies that argument – the only rational reading of its wording is that its purpose is to prohibit all card rooms, not merely halt the spread of them.[5]  The Edmonds court found a legitimate public purpose to that municipality's ordinance (a) in the testimony presented at council meetings (although there is evidence that there was testimony from supporters and detractors of social card rooms, Plaintiffs do not dispute that there was some sentiment in the community in favor of banning gambling) and (b) in the "historical acceptance of the regulation of gambling as a valid exercise of the police power and the explicit authorization by the Legislature in RCW 9.46.295 to permit municipalities to prohibit gambling absolutely."  117 Wash.App. at 365.  The

---

[5] And the firmly established Edmonds/Paradise precedent prohibiting municipalities from only banning the *future* establishment of card rooms has been discussed at length *supra*.

**ORD ON MTN**
**FOR SUMM JMT - 8**

1   Court finds that Defendants' intention to ban social card rooms represented a legitimate
2   public purpose.

3   2.  ***Reasonably necessary***: <u>Edmonds</u> and <u>Paradise</u> make it clear that, in the state of
4   Washington, under RCW 9.46.295, anything short of a complete ban would amount to
5   an impermissible "regulation" of gambling. <u>Edmonds</u>, at 365; <u>Paradise</u>, at 181. The
6   Court finds that the Ordinance was reasonably necessary in order for Defendants to
7   prohibit gambling as they were authorized to do by the Legislature.

8   3.  ***Unduly oppressive***: The leading state case (<u>Presbytery of Seattle v. King County</u>, 114
9   Wn.2d 320 (1990)) lists several factors to consider in weighing oppressiveness:

10  a.  <u>The nature of the harm to be avoided</u>: As has been discussed fully *supra*,
11      gambling has long been considered an activity which is legitimately the subject
12      of the exercise of a municipality's police power;

13  b.  <u>The availability and effectiveness of less drastic protective measures</u>: Again, as
14      fully explicated above, the current state of statutory and case law dictates that
15      the municipality which wishes to prohibit gambling is constrained from any "less
16      drastic protective measures" than a complete and immediate ban;

17  c.  <u>The economic loss suffered by the property owner</u>: The Court is aware of
18      Plaintiffs' claim that the closing of the card room will doom the associated
19      enterprises of the bowling alley and restaurant which also occupy the property
20      in question. Pltfs Memo, p. 18. However, the Court is mindful of the fact that
21      Plaintiffs still own a valuable piece of commercial property for which many
22      possible profitable uses remain – the effect of Defendants' action has been to
23      restrict one activity, not to deny Plaintiffs the opportunity to turn the property
24      to any profitable use (as would be the case had the property been turned to use

**ORD ON MTN**
**FOR SUMM JMT - 9**

as a public park or wildlife preserve).  The Court does not find that the Defendants' proper exercise of its police power for a legitimate public purpose is outweighed by the nature of Plaintiffs' economic loss.

  d. <u>The property owner's ability to anticipate the regulation</u>: The Court finds some merit in Plaintiffs' contention that their lengthy existence within the community, coupled with the "grandfather" status accorded the 11th Frame in the 2003 ordinance and the fact that as originally written the 2005 ordinance allowed the card room to live out the length of its current license (the final version of the Ordinance eliminated this provision), may have impaired their ability to anticipate the municipality's action.  However, these considerations must be balanced against other facts: the existence of the Washington Gambling Act empowering municipalities to prohibit gambling, the 2003 rulings in <u>Edmonds</u> and <u>Paradise</u> upholding the exercise of that power by other municipalities, and Judge Lukens' ruling in the wake of <u>Edmonds</u> that Defendants' moratorium was an inappropriate "regulation" of gambling in violation of RCW 9.46.295.  Additionally, the finite nature of the gambling license itself – the fact that Plaintiffs had to face a process of reapplication and possible denial of the license annually – constituted some notice that their continued existence was never assured.  At best these countervailing factors balance each other out and, in the grand weighing-and-balancing scheme of the test for "undue oppression," they cannot be said to tip the scales in Plaintiffs' favor.

It is the opinion of this Court that an examination of all the factors necessary for establishment of a substantive due process violation under state law yields the conclusion that Plaintiffs have not, as

**ORD ON MTN**
**FOR SUMM JMT - 10**

a matter of law, succeeded in making their case for this cause of action. Accordingly, both the federal and state substantive due process claims will be dismissed on summary judgment.

## CONCLUSION

Finding no genuine issues of disputed material fact, the Court finds that Defendants are entitled to partial summary judgment as a matter of law. The card room is not entitled to the protections accorded legal nonconforming uses because Plaintiffs have no vested rights in its gambling license or operation. Plaintiffs' takings compensation claim is not yet ripe. The federal courts do not recognize a substantive due process claim where a party has a more specific unjust takings claim and Plaintiffs have not satisfied the conditions for a finding of a substantive due process violation under state law. This order does not dismiss Plaintiffs' Sixth Cause of Action. The remainder of Plaintiffs' claims are hereby DISMISSED; the Ninth Cause of Action is dismissed without prejudice.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: August _10_, 2006

_[signature]_

Marsha J. Pechman
U.S. District Judge